UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

                                                              **Hon. Hugh B. Scott**

                              v.
                                                              07CR142A


                                                              **Order**

BETZAIDA ROSA,
ZELMALY TORRES,
ROBERTO E. NAVARRO,

                    Defendants.


        This matter is referred to the undersigned to hear and determine pretrial matters pursuant

to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed

findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C.

§ 636(b)(1)(A) (Docket No. 19).

        The instant matters before the Court are (a) defendant Rosa's omnibus motion (Docket

No. 38[1]) which seeks the following relief:  a bill of particulars, discovery, production of <u>Giglio</u>

materials, production of Jencks Act materials, identification of informants; (b) defendant Navarro

joins in most of Rosa's motions (Docket No. 39[2]); and (c) defendant Torres' omnibus motion for

discovery, production of <u>Brady</u> material, Federal Rules of Evidence 404(b), 608, and 609

---

[1]In support of this motion is defense counsel's affirmation, Docket No. 38.  In opposition, the Government filed its initial response, Docket No. 40.

[2]In support of this motion is Navarro's defense counsel's affidavit in support, Docket No. 39. In opposition, the Government filed its initial response, Docket No. 40.

evidence, preservation of evidence, disclosure of Jencks Act materials, request for bill of particulars, and suppression of evidence (Docket No. 42[3]).  For convenience, this Order considers these motions together.  Also within Rosa's and Torres' motions are motions to suppress statements and to suppress physical evidence[4] (Docket Nos. 38, 42); these motions will be considered separately in a Report & Recommendation.

Motions were due by January 28, 2008, with the Government's response due by February 11, 2008 (Text minute entry, Nov. 27, 2007).  The Government has filed responding papers and oral argument was heard on March 11, 2008 (id.; Docket No. 46).

## BACKGROUND

Defendants were charged in a four-count Superceding Indictment with conspiracy to distribute controlled substances (cocaine), in violation of 21 U.S.C. § 841; use of a communication facility (the U.S. mail) to commit felonies, in violation of 21 U.S.C. §§ 841, 846, 2 (Docket No. 27, Indictment, Counts 1, 2).  The Indictment also charged defendant Navarro with unlawful possession of 500 grams or more of cocaine on January 11, 2007 (id. Count 3), while it charged defendants Rosa and Torres possessed a similar amount of cocaine on January 16, 2007 (id. Count 4).

This case arises from the United States Drug Enforcement Administration ("DEA") and the postal inspectors conducting a controlled delivery of an Express Mail package addressed to a "Y. Prado" at 66 Kenefick Avenue, apartment 2, Buffalo, New York (Docket Nos. 40, 43, Gov't

---

[3]In support of this motion is defense counsel's supporting affidavit, Docket No. 42.  In opposition, the Government filed a separate response, Docket No. 43.

[4]Defendant Navarro did not join in these motions.

Responses at 1).  The return address on that parcel was an address in Ponce, Puerto Rico (id.).

Prior to January 16, 2007, the U.S. Postal Inspectors intercepted a package which contained a

handwritten label (not a typed label usually used for Express Mail labels by commercial

customers), there was no business account number on that label, indicating that the sender paid

cash, that last name of the address has received Express Mail parcels at the address but does not

regularly receive mail at the address, and the parcel was heavily taped, all signs of possible use of

Express Mail to transport controlled substance (Appl. for Search Warrant, Case No. 07-M-2217,

Aff. of Postal Inspector Stacy Wiechec, sworn to Jan. 16, 2007, ¶¶ 8, 5).  This package was

searched (Docket No. 43, Gov't Response at 1); a Niagara Frontier Transportation Authority

drug-detecting dog sniffed the package and had a positive result (Wiechec Aff. of Jan. 16, 2007,

¶ 7; "Affidavit" of Thomas Kolbert, Narcotics/K-9 Handler).  A warrant was issued to search the

parcel and cocaine was found in it.  An anticipatory search warrant then was sought for the

addressee at Kenefick Avenue while the parcel was delivered with sham cocaine.  (See Docket

No. 43, Gov't Response at 1-2.)  That apartment then was placed under surveillance and one

DEA agent noted that he saw an unknown individual in the upper apartment looking out the

window (id. at 2).

On January 16, 2008, an undercover postal inspector posed as a mail carrier and delivered

the parcel with the sham cocaine.  The undercover inspector spoke with a female later identified

as defendant Rosa and asked her about the addressee "Y. Prado," with Rosa responding that Y.

Prado was her cousin.  Rosa then signed for the parcel and the undercover agent gave it to her.

(Id. at 3.)  For about an hour after that delivery, Rosa was observed peering out the upper

apartment window.  Rosa then was observed leaving the side door to a trash tote, dropping

something into the tote.  (Id.)  Two hours later, a white sedan with two Hispanic females inside

stopped in front of 66 Kenefick Avenue and Rosa exited that building and entered their car.  The

vehicle left and then was stopped by federal agents.  Other agents then entered the upper

apartment of 66 Kenefick Avenue pursuant to the anticipatory search warrant.  (Id. at 3-4.)  The

agents searched for the Express Mail parcel within the apartment then searched the trash tote and

found the parcel in a plastic bag (id. at 4-5).

        The agents brought the three women to 66 Kenefick Avenue for questioning, advising

defendants Rosa and Torres of their Miranda rights.  Rosa then stated that she accepted the parcel

for her cousin Torres' boyfriend, defendant Navarro, stating that Navarro had instructed her to

receive the package and to hold it for another person would pick it up later (id. at 5).  Rosa stated

that she received parcels for Navarro in the past and was to be paid $500 for receiving this one

(id.).  She said that, before the agents entered the apartment, she called Navarro and he told her to

leave the parcel for him in the trash tote, which she did (id. at 5-6).

        Agents then asked Torres as to the whereabouts of Navarro and she said that he was in

Puerto Rico (id. at 6).  The agents then instructed Torres to call Navarro to ask him to come over

and retrieve the parcel (id.).  The agents had Torres call Navarro three more times, this time the

calls were recorded; Navarro became evasive and refused to engage in a deeper conversation

with Torres.

        Rosa and Torres then were arrested and charged with conspiracy to possess cocaine and

other related charges.  (Id. at 7.)  Navarro was later arrested in Puerto Rico (id. at 10).

        In response to these omnibus motions, the Government moves for reciprocal discovery

(Docket No. 40, Gov't Response at 26-28).

**DISCUSSION**

I.     Bill of Particulars

All defendants move for bills of particular (Docket No. 38, Rosa Atty. Affirm. ¶¶ 4-6;

Docket No. 42, Torres Atty. Aff. ¶ 32; <u>see</u> Docket No. 39, Navarro Motion), specifying the

participants in these offenses, the amounts of cocaine at issue.  The Government responds to all

motions arguing that a bill of particulars is not warranted here due to the pretrial discovery

furnished to defendants (Docket No. 40, Gov't Response to Rosa and Navarro at 10-16; Docket

No. 43, Gov't Response to Torres at 10-16).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct

the filing of a Bill of Particulars.  Bills of Particulars are to be used only to protect a defendant

from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at

trial.  <u>United States v. Torres</u>, 901 F.2d 205 (2d Cir. 1990).  The Government is not obligated to

"preview its case or expose its legal theory" <u>United States v. LaMorte</u>, 744 F. Supp. 573

(S.D.N.Y. 1990); <u>United States v. Leonelli</u>, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it

disclose the precise "manner in which the crime charged is alleged to have been committed,"

<u>United States v. Andrews</u>, 381 F.2d 377 (2d Cir. 1967).  Notwithstanding the above, there is a

special concern for particularization in conspiracy cases. <u>United States v. Davidoff</u>, 845 F.2d

1151 (2d Cir. 1988).

Upon review of the Indictment and noting the discovery the Government has furnished to

defendants, the Court finds that defendants are not entitled to a Bill of Particulars inasmuch as

they are each sufficiently advised of the charges against her or him to allow for the proper

preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

II.      Discovery

Defendants seek various items of pretrial discovery (Docket No. 38, Rosa Atty. Affirm. ¶¶ 7-47; Docket No. 42, Torres Atty. Aff. ¶¶ 4-11; <u>see</u> Docket No. 39, Navarro Motion). Although there is no general constitutional right to pretrial discovery in a federal criminal case, a defendant does have a pretrial discovery right with respect to certain matters. For example, under the Fifth Amendment's due process clause, a defendant is entitled to specific exculpatory evidence which is material either to guilt or punishment.  In addition, the Government has certain disclosure obligations under Rule 16 of the Federal Rules of Criminal Procedure and the Jencks Act, 18 U.S.C. § 3500.

A.      Various Discovery Items

<u>Statements.</u>

Pursuant to Rule 16(a)(1)(A) the defendants seek any written or oral statements made by the defendants which are within the possession custody or control of the Government, or which through the exercise of due diligence, may become known to the Government (Docket No. 38, Rosa Atty. Affirm. ¶ 9; Docket No. 42, Torres Atty. Aff. ¶ 5; <u>see</u> Docket No. 39, Navarro Motion).

Rule 16(a)(1)(A) provides that, upon request, the Government must disclose any written or recorded statements made by a defendant, before or after arrest, in response to interrogation by any person known to the defendant to be a Government agent; and recorded testimony of the

defendant before the grand jury which relates to the offense charged.[5]  Failure of the Government

to disclose a defendant's statements to a Government agent may rise to the level of constitutional

due process violation. <u>Clewis v. Texas</u>, 386 U.S. 707 (1967).

In this case, the Government has represented that it believes that it has already disclosed

all statements made by the defendants, namely translated transcripts of telephone conversations

between Torres and Navarro, and concludes that no further disclosure is warranted (Docket

No. 40, Gov't Response at 10-11).  To the extent that the Government has not yet done so,

pursuant to Rule 16 (a)(1)(A) the Government is hereby directed to produce all such statements

made by the defendants.

Statements of Co-Conspirators.

Rosa and Navarro have also requested production of all statements of any co-conspirator,

whether charged or uncharged (<u>see</u> Docket No. 38, Rosa Atty. Affirm. ¶ 12; Docket No. 39,

Navarro Motion).  This request is **denied**.  It is well established that the statements of co-

conspirators are not discoverable under Rule 16(a).  <u>In re United States</u>, 834 F.2d 283, 286 (2d

Cir. 1987); <u>United States v. Percevault</u>, 490 F.2d. 126 (2d Cir. 1974); <u>United States v. Green</u>,

144 F.R.D. 631, 638 (W.D.N.Y. 1992) (Heckman, Mag. J.).  The Jencks Act provides the

exclusive procedure for discovering statements that Government witnesses have given to law

enforcement agencies.  <u>United States v. Covello</u>, 410 F.2d 536, 543 (2d Cir.), <u>cert. denied</u>,

396 U.S. 879 (1969).

---

[5]Rule 16 (a)(2) expressly provides that subdivision (a)(1) does not authorize disclosure of statements made by Government witnesses or prospective Government witnesses except as provided in 18 U.S.C. § 3500, the Jencks Act.

Documents and Tangible Objects

Pursuant to Rule 16(a)(1)(C), Rosa and Navarro also seek production of various documents, books, records, photographs, and other tangible objects in the possession, custody or control of the Government (Docket No. 38, Rosa Atty. Affirm. ¶¶ 33-34, 35-39, 42-43; Docket No. 39, Navarro Motion).

The Government's response to these specific requests is that it furnished other items (such as laboratory reports, investigative reports from the DEA, search warrant applications and affidavits) and that no further disclosure should be required (Docket No. 40, Gov't Response at 10-11; see also id. at 15 (terming its disclosure to be "voluminous")). The Court assumes that the Government's production in this area has satisfied defendants' requests.

Examinations and Test Reports

Pursuant to Rule 16(a)(1)(D), Rosa and Navarro have requested the production of the results of any physical or mental examinations or scientific tests, including but not limited to any such tests regarding the cocaine or firearms referenced in the Indictment (Docket No. 38, Rosa Atty. Affirm. ¶¶ 16-17; Docket No. 39, Navarro Motion). The Government has responded that it has already produced various investigative and laboratory reports to defendants (Docket No. 40, Gov't Response at 10).

The Court again assumes that the Government's production has satisfied defendants' request in this regard.

Hearsay Evidence

Rosa and Navarro next seek disclosure of any hearsay evidence intended to be introduced

by the Government at trial (Docket No. 38, Rosa Atty. Affirm. ¶ 11; Docket No. 39, Navarro

Motion).

There is no legal or factual basis requiring disclosure of such material in this case.  See

Green, supra,144 F.R.D. at 638.  Thus, this request is **denied**.

Identification Procedures

Rosa and Navarro each seek disclosure of any visual or audio identification procedures

utilized in this case; specifying the procedure, the participants and the circumstances; any visual

or audible representation of a person or voice used for identification purposes (Docket No. 38,

Rosa Atty. Affirm. ¶ 18; Docket No. 39, Navarro Motion).  The Government has not directly

responded to this specific request.

The record in this case does not reflect whether or not any such procedures were used.

The Government's complete lack of response on this issue does not provide the Court with any

assistance in this regard.  In any event, inasmuch as pretrial identification issues may raise

questions of due process under the Fifth and Fourteenth Amendments, with the exception of the

identity of any informant or witness, the Government is directed to provide defendants with

information regarding any visual or audio identification procedures used in this case.  See Green,

supra, 144 F.R.D. at 639.

B.      Federal Rules of Evidence 403, 404, 609

Defendants each request disclosure of all evidence of prior bad acts that the Government

intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b).  They also

request disclosure of all evidence of prior bad acts that the Government intends to use for

impeachment of the defendant should he testify at trial, pursuant to Rules 608(b) and 609(a).

(Docket No. 38, Rosa Atty. Affirm. ¶ 48; Docket No. 42, Torres Atty. Aff. ¶¶ 20-24.)

Rule 404 requires that the defendant be given "reasonable notice in advance of trial, or

during trial if the court excuses pretrial notice on good cause shown, of the general nature of any

such evidence it intends to use at trial."  The Government has represented that it furnished such

material during conferences with defense counsel, that it intends to provide at trial evidence of

this drug activity with other drug activity defendants engaged in between 2005 and 2007 (Docket

No. 40, Gov't Response at 16).  The Government gave preliminary notice of its intention to

introduce at trial all prior criminal conduct of defendants, with more definitive notice within two

weeks of trial (id. at 17-18).  This is sufficient in this case.

The Government declines to provide Rule 609 disclosure of impeachment information

now (id. at 19-20; Docket No. 43, Gov't Response to Torres at 21-22), leaving the timing of this

disclosure for the District Judge who will try this case.

C.      Federal Rules of Evidence 702, 703, 705–Expert Disclosure

Rosa and Navarro also seek production of the Government's expert witnesses (Docket

No. 38, Rosa Def. Atty. Affirm. ¶ 49; Docket No. 39, Navarro Motion).  The Government

responds that it will identify its expert witnesses, provide written summaries of their testimony

and the basis for their opinions pursuant to the schedule of the District Court (Docket No. 40,

Gov't Response at 20).

This request is **granted** and the Government will furnish this material pursuant to the

pretrial Order of the District Judge.

III.    <u>Brady</u>/ <u>Giglio</u> Material

Defendants have requested that the Government disclose all materials potentially favorable to them, including information to be used for the impeachment of the Government's witnesses, as required under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), its progeny and <u>Giglio</u>, 405 U.S. 150 (1972) (Docket No. 38, Rosa Atty. Affirm. ¶¶ 49-58; Docket No. 42, Torres Atty. Aff. ¶¶ 12-19; Docket No. 39, Navarro Motion).  <u>Brady</u> material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment.  Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching . . . [and] [a]ny and all records and information revealing prior misconduct . . . attributed to the [Government's] witness."  <u>United States v. Kiszewski</u>, 877 F.2d 210 (2d Cir. 1989).

Defendants' motions identify numerous specific categories of documents encompassing both exculpatory and impeachment <u>Brady</u> materials which they seek to obtain.  The Government's written response is as follows: "The government acknowledges its obligation under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (172), and their progeny.  At this time, the government is aware of no evidence required to be disclosed pursuant to <u>Brady</u>.  The government also acknowledges its continuing obligation to provide <u>Brady</u> material to the defense and it will do so when and if the existence of such evidence becomes known."  (Docket No. 40, Gov't Response to Rosa and Navarro at 20; Docket No. 43, Gov't Response to Torres at 16.)

As far as "impeachment" <u>Brady</u> material, the Government states that it will disclose such material pursuant to the District Judge final pretrial Order (Docket No. 40, Gov't Response to Rosa and Navarro at 22; Docket No. 43, Gov't Response to Torres at 17-18).

The Jencks Act relates only to "statements" made by Government witnesses.  Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under <u>Brady</u> principles.  To this extent, it has been suggested that the constitutional requirements underlying <u>Brady</u> could act to modify the Jencks Act.  <u>United States v. Campagnuolo</u>, 592 F.2d 852, 860 (5th Cir. 1979); <u>but see</u> <u>United States v. Presser</u>, 844 F.2d 1275 (6th Cir. 1988) (the Government may not be compelled to pretrial disclosure of <u>Brady</u> or Jencks material).  The record in this case does not reflect whether any of the materials withheld by the Government may be considered both <u>Brady</u> and Jencks material.  Certainly "impeachment <u>Brady</u>" material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie <u>Brady</u> mandate that the Court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined <u>Brady</u>/Jencks material.  Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, . . . sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial . . . so that those abhorrent lengthy pauses at trial to examine documents can be avoided." <u>United States v. Percevault</u>, 490 F.2d 126 (2d Cir. 1974); <u>Green</u>, <u>supra</u>, 144 F.R.D. 631 (W.D.N.Y. 1992).

12

The instant case does not appear to be unusually complex.  Balancing all of the above, the Court concludes that disclosure of such impeachment material, if any exists, in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendants to have a fair opportunity to utilize the information at trial) is sufficient in this case.

IV.     Jencks Act Disclosure

All defendants next seek early disclosure of Jencks Act materials (Docket No. 38, Rosa Def. Atty. Affirm. ¶¶ 59-63; Docket No. 42, Torres Atty. Aff. ¶¶ 29-31).  They seek immediate disclosure of material subject to the Jencks Act, 18 U.S.C. § 3500.  The Jencks Act governs the disclosure of information and statements relating to the Government's witnesses.  Generally, according to the Jencks Act, the Government need not disclose such information regarding its witnesses until <u>after</u> the witness has testified at trial.  In this case, the Government has agreed to disclose this information at the pretrial conference (Docket No. 40, Gov't Response to Rosa and Navarro at 23; Docket No. 43, Gov't Response to Torres at 23).  The defendants have not established that prior disclosure of Jencks material is essential to the preparation of a defense in this case.

V.      Identity of Informants

Rosa and Navarro each seek the pre-trial disclosure of the identity of any informants in this case (Docket No. 38, Rosa Atty. Affirm. ¶¶ 64-67; Docket No. 39, Navarro Motion).  The Government argues that this disclosure is unwarranted at this point, that defendants have been provided the substance of informants' testimony and further requests would be responded to through <u>Brady</u> and Jencks Act material in the future (Docket No. 40, Gov't Response at 23).

13

The Government is not required to furnish the identities of informants unless it is essential to the defense.  Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).  Nor does Rule 16 require the Government to disclose the names of witnesses prior to trial.  United States v. Bejasa, 904 F.2d 137, 139 (2d Cir.), cert. denied, 498 U.S. 921 (1990).  Moreover, the Government has stated that it believes that disclosure of the informant's identification would subject the informant to personal danger from retribution by the defendant and others.

Defendants have not established that the pre-trial disclosure of the identities of any informants is essential to his defense.  This request is **denied**.

VI.     Preservation of Evidence

Torres seeks preservation of agents' rough notes and other evidence (Docket No. 42, Torres Atty. Aff. ¶¶ 25-28).  The Government responds that it will instruct its agents to preserve their notes (Docket No. 43, Gov't Response at 22).

VII.    Government Cross-Motions

The Government moved for discovery from defendants (Docket No. 40, Gov't Respose to Rosa, Navarro at 26-28; Docket No. 43, Gov't Response to Torres at 26-28), without objection by any defendant.  Under Rule 16, the Government is entitled to production of documents in defendant's possession that she or he intends to use in her or his case-in-chief.  Defendants are reminded of their respective obligations under Rule 16 to produce pursuant to the government's notice for discovery, therefore, the Government's cross-motion is **granted**.

**CONCLUSION**

For the reasons stated above, defendant Rosa's omnibus motion (Docket 38), defendant Navarro's omnibus motion (Docket No. 39) joining Rosa's motion (in most part), and defendant Torres' omnibus motion (Docket No. 42) is **granted in part, denied in part,** as stated above. The Government's motions for reciprocal discovery (Docket No. 40, Gov't Response to Rosa and Navarro at 26-28; Docket No. 43, Gov't Response to Torres at 26-28) are **granted**.

So Ordered.

/s/ Hugh B. Scott

_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated:  Buffalo, New York
         April 4, 2008