UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                    **Hon. Hugh B. Scott**

         v.

                                                    07CR142A

                                                    **Report**
                                                       **&**
BETZAIDA ROSA,                                 **Recommendation**
ZELMALY TORRES,
ROBERTO E. NAVARRO,

                    Defendants.
_____

This matter is referred to the undersigned to hear and determine pretrial matters pursuant to 28 U.S.C. § 636 (b)(1)(A) and, pursuant to 28 U.S.C. § 636(b)(1)(B), to submit proposed findings of fact and recommendations for the disposition of any motion excepted by 28 U.S.C. § 636(b)(1)(A) (Docket No. 19).

The instant matters before the Court are (a) defendant Rosa's omnibus motion (Docket No. 38[1]) which seeks the following relief: a bill of particulars, discovery, production of <u>Giglio</u> materials, production of Jencks Act materials, identification of informants; and (b) defendant Torres' omnibus motion for discovery, production of <u>Brady</u> material, Federal Rules of

---

[1] Defendant Navarro joined in Rosa's discovery motions, Docket No. 39, but not in her motions to suppress.
    In support of this motion is defense counsel's affirmation, Docket No. 38. In opposition, the Government filed its initial response, Docket No. 40.

Evidence 404(b), 608, and 609 evidence, preservation of evidence, disclosure of Jencks Act materials, request for bill of particulars, and suppression of evidence (Docket No. 42[2]).

Motions were due by January 28, 2008, with the Government's responses due by February 11, 2008 (Text minute entry, Nov. 27, 2007). The Government has filed responding papers (Docket Nos. 40 (to Rosa), 43 (to Torres)) and oral argument was heard on March 11, 2008 (id.; Docket No. 46).

This Report is directed to Rosa and Torres' motions to suppress evidence and, for convenience, these motions will be considered together here. A separate Order considers the discovery and other relief motions.

## BACKGROUND

Defendants were charged in a four-count Superceding Indictment with conspiracy to distribute controlled substances (cocaine), in violation of 21 U.S.C. § 841; use of a communication facility (the U.S. mail) to commit felonies, in violation of 21 U.S.C. §§ 841, 846, 2 (Docket No. 27, Indictment, Counts 1, 2). The Indictment also charged defendant Navarro with unlawful possession of 500 grams or more of cocaine on January 11, 2007 (id. Count 3), while it charged defendants Rosa and Torres possessed a similar amount of cocaine on January 16, 2007 (id. Count 4).

This case arises from the United States Drug Enforcement Administration ("DEA") and the postal inspectors conducting a controlled delivery of an Express Mail package addressed to a "Y. Prado" at 66 Kenefick Avenue, apartment 2, Buffalo, New York (Docket Nos. 40, 43, Gov't

---

[2] In support of this motion is defense counsel's supporting affidavit, Docket No. 42. In opposition, the Government filed a separate response, Docket No. 43.

Responses at 1). The return address on that parcel was an address in Ponce, Puerto Rico (id.). Prior to January 16, 2007, the U.S. Postal Inspectors intercepted a package which contained a handwritten label (not a typed label usually used for Express Mail labels by commercial customers), there was no business account number on that label, indicating that the sender paid cash, that last name of the address has received Express Mail parcels at the address but does not regularly receive mail at the address, and the parcel was heavily taped, all signs of possible use of Express Mail to transport controlled substance (Appl. for Search Warrant, Case No. 07-M-2217, Aff. of Postal Inspector Stacy Wiechec, sworn to Jan. 16, 2007, ¶¶ 8, 5). This package was searched (Docket No. 43, Gov't Response at 1); a Niagara Frontier Transportation Authority drug-detecting dog sniffed the package and had a positive result (Wiechec Aff. of Jan. 16, 2007, ¶ 7; "Affidavit" of Thomas Kolbert, Narcotics/K-9 Handler). A warrant was issued to search the parcel and cocaine was found in it. An anticipatory search warrant then was sought for the addressee at Kenefick Avenue while the parcel was delivered with sham cocaine. (See Docket No. 43, Gov't Response at 1-2.) That apartment then was placed under surveillance and one DEA agent noted that he saw an unknown individual in the upper apartment looking out the window (id. at 2).

On January 16, 2008, an undercover postal inspector posed as a mail carrier and delivered the parcel with the sham cocaine. The undercover inspector spoke with a female later identified as defendant Rosa and asked her about the addressee "Y. Prado," with Rosa responding that Y. Prado was her cousin. Rosa then signed for the parcel and the undercover agent gave it to her. (Id. at 3.) For about an hour after that delivery, Rosa was observed peering out the upper apartment window. Rosa then was observed leaving the side door to a trash tote, dropping

something into the tote.  (Id.)  Two hours later, a white sedan with two Hispanic females inside stopped in front of 66 Kenefick Avenue and Rosa exited that building and entered their car.  The vehicle left and then was stopped by federal agents (id. at 3-4).  The passenger in that vehicle was defendant Torres (Docket No. 42, Torres Atty. Aff. ¶ 36).  Other agents then entered the upper apartment of 66 Kenefick Avenue pursuant to the anticipatory search warrant.  (Docket No. 43, Gov't Response at 3-4.)  The agents searched for the Express Mail parcel within the apartment then searched the trash tote and found the parcel in a plastic bag (id. at 4-5).

The agents brought the three women to 66 Kenefick Avenue for questioning, advising defendants Rosa and Torres of their Miranda rights.  Rosa then stated that she accepted the parcel for her cousin Torres' boyfriend, defendant Navarro, stating that Navarro had instructed her to receive the package and to hold it for another person would pick it up later (id. at 5).  Rosa stated that she received parcels for Navarro in the past and was to be paid $500 for receiving this one (id.).  She said that, before the agents entered the apartment, she called Navarro and he told her to leave the parcel for him in the trash tote, which she did (id. at 5-6).

Agents then asked Torres as to the whereabouts of Navarro and she said that he was in Puerto Rico (id. at 6).  The agents then instructed Torres to call Navarro to ask him to come over and retrieve the parcel (id.).  The agents had Torres call Navarro three more times, this time the calls were recorded; Navarro became evasive and refused to engage in a deeper conversation with Torres.

Rosa and Torres then were arrested and charged with conspiracy to possess cocaine and other related charges.  (Id. at 7.)

**DISCUSSION**

Torres seeks an evidentiary hearing regarding statements she may have made to Government agents as well as when Torres was arrested and whether that arrest was lawful. During oral argument, Rosa complained that the supporting affidavit for the search of the Express Mail parcel by the NFTA dog handler was not properly notarized and thus the entire warrant (for that search and the subsequent anticipatory search warrant for the Kenefick Avenue apartment) were insufficient. Rosa concludes that the there was no probable cause to arrest her. (See Docket No. 38, Rosa Atty. Affirm. ¶¶ 79-81.)

The Fourth Amendment protects persons against "unreasonable searches and seizures," U.S. Const. amend. IV. "Evidence seized pursuant to an unreasonable search or seizure or evidence that is the 'fruit' of an unreasonable search or seizure must be suppressed and cannot be used in the prosecution's case in chief," United States v. McCargo, 464 F.3d 192, 196 (2d Cir. 2006) (citing James v. Illinois, 493 U.S. 307, 312 (1990); Wong Sun v. United States, 371 U.S. 471, 484-86 (1963)).

I.   Rosa

Rosa seeks to suppress her statements to agents, some made prior to Rosa being advised of her Miranda rights (Docket No. 38, Rosa Atty. Affirm. ¶¶ 68-76, 69), and physical evidence seized from 66 Kenefick Avenue (id. ¶¶ 77-82).

    A.   Rosa's Statements

The Government argues Rosa's statements were made after she was advised of her Miranda rights (Docket No. 40, Gov't Response at 24-25). The Government concedes that an

5

evidentiary hearing may be in order (id. at 25).  The Court thus **shall hold an evidentiary hearing** as to how Rosa's statements were obtained.

  B. Physical Evidence

  Rosa contends that there was no probable cause for searching 66 Kenefick Avenue (see Docket No. 38, Rosa Atty. Affirm. ¶¶ 80-82).  The Government contends that Rosa's apartment was searched pursuant to a valid federal search warrant (issued by the undersigned) (Docket No. 40, Gov't Response at 25).  Relying upon United States v. Leon, 468 U.S. 897 (1984), the Government concludes that Rosa did not show that any reliance upon the warrant was unreasonable (id. at 25-26).  The Government does not address the validity of one of the underlying affidavits used to support the search warrants.

  The Fourth Amendment to the United States Constitution provides that no search warrant "shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," U.S. Const. amend. IV; see Fed. R. Cr. P. 41(d)(1)(warrant issues upon a judge receiving an affidavit "or other information").  Probable cause is required for issuance of a search warrant, United States v. Salameh, 152 F.3d 88, 112-13 (2d Cir. 1998) (Docket No. 38, Rosa Atty. Affirm. ¶ 79), with probable cause determined on the totality of circumstances, see United States v. Wagner, 989 F.2d 69, 71-72 (2d Cir. 1993); Illinois v. Gates, 462 U.S. 213, 238 (1983) (id. ¶ 80).  This constitutional oath requirement "is not to be cavalierly brushed aside as an empty formality," Dow v. Baird, 389 F.2d 882, 884 (10th Cir. 1968) (holding that search warrant there "was clearly and obviously invalid").

Although Federal Rule of Criminal Procedure 41(d) refers to an affidavit "or other information" as the basis for a magistrate judge finding probable cause to issue a warrant, Fed. R. Cr. P. 41(d)(1), the balance of the rule refers either to sworn affidavits or statements taken under oath before the magistrate, see id. R. 41(d)(2), (3) (other means, recorded under oath or certified).

Here, the NFTA officer who handled the drug-detecting dog did not have his signature to his "affidavit" notarized before a judicial officer or a notary, although the subsequent affidavit in support of the search warrant (using the first "affidavit" as the basis for the postal inspector to seek a warrant to open the package) was sworn to before the undersigned.  It is the postal inspector's affidavits that would sufficiently articulate grounds for probable cause to search the parcel itself and then the address to which it was intended; in essence, postal inspector Wiechec attached an exhibit (Officer Kolbert's "affidavit") to her affidavit in support of the search warrant for searching the parcel.  Wiechec states in her first affidavit that she witnessed the drug-detection dog sniff the parcel and reach a positive result (Wiechec Aff. of Jan. 16, 2007, ¶ 7), while Kolbert's "affidavit" merely vouched for his training and that of the dog and stated that the dog had a positive alert for the odor of a controlled substance (Kolbert "Affidavit").

Given the evidentiary hearing as to Rosa's statements (among other issues), however, the Court **will defer recommending a ruling** upon her motion to suppress physical evidence until after that hearing.

II.     Torres

Torres argues that she was a passenger in the white sedan that passed by 66 Kenefick Avenue, that the driver picked up Rosa and drove away from that property and away from the trash tote containing the fake contraband (Docket No. 42, Torres Atty. Aff. ¶¶ 33-38).  Torres

7

was detained while 66 Kenefick Avenue was searched and other persons were questioned (id. ¶ 39). She concludes that her initial stop and detention was without reasonable suspicion or probable cause to arrest her (id. ¶ 40).

That white sedan arrived in front of 66 Kenefick Avenue on January 16, 2007, at approximately 3:20 pm (Docket No. 43, Gov't Response at 4), when Rosa entered the vehicle from that address and the vehicle was stopped by Government agents. At 3:40 pm, the three occupants of the car (including Torres and Rosa and Rosa's sister) were brought into 66 Kenefick Avenue for questioning and were advised of their rights (id. at 5), more than twenty minutes "without any further indication of any involvement with illegal activity" according to Torres (Docket No. 42, Torres Atty. Aff. ¶ 38). Torres was detained inside that apartment while Rosa and others were questioned (id. ¶ 39). Torres considers this a conversion of the detention into a de facto arrest (id. ¶¶ 41, 45), and that her statements were made without being advised of her Miranda rights (id. ¶ 43), and she is moving to suppress her statements (id. ¶ 44). At approximately 4:25 pm, Torres was questioned by Government agents about her boyfriend, Navarro (Docket No. 43, Gov't Response at 6).

The Government argues that Rosa signed for the parcel (with the sham cocaine) as "Elizabeth Torres" and that Torres (with others) provided transportation to Rosa after Rosa accepted the parcel (Docket No. 43, Gov't Response at 23, 25). The Government also states that Torres was advised of her Miranda rights at the same time as Rosa was advised as the agents moved them into the apartment at 66 Kenefick Avenue (id. at 5). A warrantless arrest may occur if a felony occurred in or out of the presence of the officer, United States v. Watson, 423 U.S. 411 (1976) (id. at 24). The Government concludes that the warrantless arrest was supported by

probable cause because the agents believed that Torres was involved in crimes (such as conspiracy to possess cocaine) and that the brief detention of her was permissible to investigate (id. at 25-26).

Reviewing reasonable suspicion determinations under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny are assessed on the totality of the circumstances supporting the investigatory stop, United States v. Cortez, 449 U.S. 411, 417-18 (1981); United States v. Muhammed, 463 F. 3d 115, 121 (2d Cir. 2006). Under Terry and its progeny, the police officer needs "reasonable suspicion," United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994), that "criminal activity may be afoot" to justify an investigatory stop, Terry, supra, 392 U.S. at 30; McCargo, supra, 464 F.3d at 197. "The Terry stop is a far more minimal intrusion, simply allowing the officer to briefly investigate further. If the officer does not learn facts rising to the level of probable cause, the individual must be allowed to go on his way." Illinois v. Wardlow, 528 U.S. 119, 126 (2000). As noted by the Second Circuit in Muhammed, 463 F.3d at 121, "an officer may 'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that "might well elude an untrained person." ' " (Quoting United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal citations omitted)). "But only 'the facts available to the officer at the moment of the seizure' may be evaluated," id. (quoting Terry, supra, 392 U.S. at 21-22) to determine whether the officer had reasonable suspicion.

Thus, these events can be broken down into (a) the jurisdiction and authority for these officers to stop Torres' vehicle, (b) Torres' subsequent detention, (c) whether she was in custody (if not formally under arrest), and (d) the probable cause for her subsequent arrest. Last year, the

Supreme Court in Brendlin v. California, 551 U.S. ___, 127 S.Ct. 2400 (June 18, 2007), established a new standard regarding passengers during police traffic stops, holding that a passenger in a vehicle stopped by the police is seized upon that stop and may challenge the constitutionality of the stop, id., 127 S.Ct. at 2403.

The police violate the Fourth and Fourteenth Amendment rights of a person when, without probable cause, they take the person into custody, transport that person to another location, and detaining them there for interrogation to a degree to trigger the traditional safeguards against illegal arrest, and any statements derived in such a de facto arrest situation must be suppressed, Dunaway v. New York, 442 U.S. 200, 206-16, 218 (1979) (Docket No. 42, Torres Atty. Aff. ¶¶ 42, 45).

Thus, **an evidentiary hearing will be necessary** to determine the reasonable suspicion for stopping and detaining that vehicle and its passengers under Terry, the probable cause for subsequently detaining Torres, and whether that detention turned into an arrest.

## CONCLUSION

Based upon the above, as for defendant Rosa's motions to suppress her statements and physical evidence (Docket No. 38) and defendant Torres' motion to suppress evidence (Docket No. 42), the Court shall conduct an **evidentiary hearing** on the issues stated in this Report; that hearing shall be held on **Wednesday, April 30, 2008, at 2 pm**, before the undersigned.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be

supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott<br>Hon. Hugh B. Scott<br>United States Magistrate Judge

Dated: Buffalo, New York
April 4, 2008